IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DENISE B. ALVERSON, on behalf of herself and all others similarly situated, et al. | )<br>)<br>)<br>) |
| Plaintiffs, | ) CIVIL ACTION NO:<br>) |
| vs. | ) 2:14-cv-01620-KOB<br>) |
| COMMUNITY HEALTH SYSTEMS, INC., et al. | )<br>)<br>) |
| Defendant. | ) |

## MOTION TO DISMISS PURSUANT TO FRCP 12(b)(1)

COME NOW the Defendants, Riverview Regional Medical Center, LLC, Gadsden Regional Medical Center, LLC, Foley Hospital Corporation, Anniston HMA, LLC, Gadsden Regional Physician Group Practice LLC, and Affinity Hospital, LLC (hereinafter collectively "Hospital Defendants"), and file this Motion to Dismiss. Nineteen of the total twenty-one named Plaintiffs lack standing to bring the claims in this lawsuit; those Plaintiffs are due to be dismissed under Rule 12(b)(1). In support of their Motion, Hospital Defendants respectfully state as follows:

## INTRODUCTION AND SUMMARY

1. This case is another putative class action arising out of an electronic data theft. This time, the Defendants are hospitals and two remote affiliates. The Plaintiffs, and the putative class they purport to represent, are patients of those hospitals who claim that private information about them was stolen by computer hackers. Unsurprisingly, the hackers who are responsible for the breach—themselves, an advanced persistent threat probably from China—are not parties to this case. At bottom, the Plaintiffs complain that the Defendants should have done more to protect their private information from criminal computer hackers. (The Complaint and amendments, of course, do not say what more could have or should have been done.)

2. This case is one of several other lawsuits hurriedly filed after an affiliate of the Defendants publicly announced the data theft. As is commonly true in data theft cases like this one (and was very recently observed in an opinion emanating from a court in this District), Article III standing is a problem for most plaintiffs in these cases. Put a different way, even though a plaintiff's private information may have been stolen, plaintiffs generally have been unable to demonstrate that they have suffered a direct and imminent harm. In this case, all but two of the Plaintiffs have failed to allege any facts demonstrating they have

been legally "injured" for standing purposes, and as such, those Plaintiffs are due to be dismissed under Fed. R. Civ. P. 12(b)(1).

3. "A motion to dismiss for lack of standing is one attacking the Court's subject matter jurisdiction, therefore it is appropriately brought under Fed. R. Civ. P. 12(b)(1)). *See Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). A Fed. R. Civ. P. 12(b)(1) motion can be made in the way of a "facial attack" on the complaint" which " requires the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). In the alternative, a defendant may raise a "factual attack" which challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* at 1529. Because a factual Rule 12(b)(1) motion challenges the court's power to hear the claim, the court must closely examine the plaintiff's factual allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* The court is not limited to the four corners of the complaint, and it may consider materials outside of the pleadings to determine whether or not it has jurisdiction. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the

existence of disputed material facts will not preclude the trial court from evaluating itself the merits of jurisdictional claims." *Id.*

4. Litigants must show that their claims present the Court with a case or controversy under the Constitution that meets the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To fulfill this requirement, a plaintiff must show the following: (1) it has suffered an injury in fact; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 180-181 (2000).

5. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. The Supreme Court has repeatedly determined that "allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990).

6. The Supreme Court recently reiterated the need for a plaintiff to have an actual injury in order to have standing. In *Clapper v. Amnesty International USA*, the Supreme Court analyzed whether the plaintiffs had suffered an injury in fact where they alleged that *they would likely* be the targets for surveillance under the

Foreign Intelligence Surveillance Act. *Clapper*, 133 S. Ct. 1138, 1145-46 (2013)(emphasis added). The Court held that the plaintiffs did not have an injury in fact because the threat of surveillance was too speculative. *Id.* at 1150. The court concluded that "a highly attenuated chain of possibilities does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 1148. The Court expressed its "usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors." *Id.* at 1150.

7. The Court also determined that plaintiffs could not establish standing by showing that they incurred certain costs as a reasonable reaction to a risk of harm. *Id.* at 1151. The court reasoned that the plaintiffs' argument that they had standing because of precautionary expenses was "unavailing – because the harm respondents seek to avoid is not certainly impending. In other words, [plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.*

8. In data theft cases, a number of courts, including a Judge within the Northern District of Alabama, have recognized that a data theft plaintiff must allege facts that satisfy the two following elements in order to confer standing: (1) that the plaintiff's identity was actually misused, as opposed to merely being stolen; and (2) that the plaintiff has suffered some out-of-pocket expense or unreimbursed charge. *Burton v. Mapco Express, Inc.*, 2014 U.S. Dist. LEXIS

127870 (N.D. Ala. 2014); *In re: Science Applications International (SAIC) Backup Tape Data Theft Litigation*, 2014 U.S. Dist. LEXIS 64125 (D. D.C. 2014); *Remijas v. The Neiman Marcus Group, LLC*, 2014 U.S. Dist. LEXIS 129574 (N.D. Ill. 2014)(dismissing the Complaint for lack of standing even though 9,200 customers actually had their credit accounts misused).

9. In this case, there are a total of twenty-one named Plaintiffs in the Complaint. The Hospital Defendants move to dismiss all but two of the named Plaintiffs for lack of standing. Nineteen of the named Plaintiffs are due to be dismissed from the lawsuit because they fail to allege that they have incurred "an injury in fact" resulting from the data theft.

II. **Because seventeen of the named Plaintiffs do not allege that their PII has been misused, their damages are based on a perceived increase threat of future damage, and as such, they do not have standing.**

10. Seventeen out of twenty-one named Plaintiffs' do not allege that their Personal Identification Information ("PII") has been misused as a result of the data theft (these Plaintiffs are referred hereinafter as the "Non-misuse Plaintiffs").[1] The failure to plead that their identities have actually been misused categorically supports the position that the Non-misuse Plaintiffs lack standing. *See Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 2013 U.S. Dist. LEXIS 180322, 2013 WL

---

[1] The seventeen Non-Use Plaintiffs are Denise B. Alverson, Janet F. Bearden, Bobbie Jean Richard, Dallas W. Richard, Robert Cadle, Patricia Saye, Cynthia Horgan, Lynda Grantham, Martin J. Griffin, Steve Percox, Joel Lovelace, Crystal Jonson, Stephen Ziegler, Lanny C. Reeves, Kristopher J. Byrum, Sarah Truman, and Richard D. Floyd.

6823265, at 14 (D.N.J. Dec. 26, 2013) (relying on *Clapper* and *Reilly* to conclude that mere loss of data, without misuse, is not "an injury sufficient to confer standing"). Notwithstanding the lack of misuse, the Non-misuse Plaintiffs all allege they have been damaged in the following ways: (1) they face an increased risk for future identity theft; (2) they suffered costs associated with protecting/monitoring their credit; (3) "loss of payment to Defendants" / diminution of the value of services provided by Hospitals; and (4) emotional distress. These alleged harms are speculative and do not amount to an actual injury in fact.

### (A)     Increased Risk of Identity Theft

11.     As reiterated by the Supreme Court in *Clapper*, 133 S. Ct. 1138, the increased likelihood that damage may arise from a third-party's actions in the future, does not confer standing. In fact, the vast majority of federal courts that have analyzed data theft cases, especially the post-*Clapper* cases, have determined that plaintiffs lacked standing because their claims of increased likelihood of harm were **too attenuated**. *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3rd Cir. 2011); *U.S. Hotel & Resort Management, Inc. v. Onity, Inc.*, 2014 U.S. Dist. LEXIS 103608 (D. Minn. 2014)(observing that "a majority of the courts" have found Article III standing lacking for claims of future injury resulting from a data breach); *In re: Science Applications International (SAIC) Backup Tape Data Theft Litigation*, 2014 U.S. Dist. LEXIS 64125 (D. D.C. 2014); *Galaria v. Nationwide Mut. Ins.*

*Co.*, 2014 U.S. Dist. LEXIS 23798 (S.D. Ohio 2014)(considering *Clapper* and decisions in other courts in determining that the increased risk of identity theft does not confer standing); *Remijas v. The Neiman Marcus Group, LLC*, 2014 U.S. Dist. LEXIS 129574 (N.D. Ill. 2014); *Strautins v. Trustwave Holdings, Inc.*, 2014 WL 960816 (N.D. Ill. 2014)(analyzing *Clapper*, the Court determined that the data breach victim's increased risk of identity theft was speculative based "on a number of variables, such as whether their data was actually taken during the breach, whether it was subsequently sold or otherwise transferred, whether anyone who obtained the data attempted to use it, and whether or not they succeeded"). Persuasively, two judges sitting in this District have recently determined in data theft/ security cases that the mere increased risk of injury is insufficient to confer standing. *See Fu, et. al, v. Wells Fargo Home Mortgage*, 2014 U.S. Dist. LEXIS 127864 (N.D. Ala. 2014); *Burton v. Mapco Express, Inc.*, 2014 U.S. Dist. LEXIS 127870 (N.D. Ala. 2014). In this case, the Non-misuse Plaintiffs' claim that they are exposed to an increased risk of possible future damage is likewise too attenuated and does not confer standing.

**(B) Credit Monitoring Costs**

12. Plaintiffs cannot bootstrap the lack of standing by alleging that they will incur costs to monitor and protect their credit because of the breach. Under *Clapper*, plaintiffs cannot use the costs of prophylactic measures in order to

"manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper,* 133 S. Ct. at 1151. Consistent with this reasoning, courts have rejected the argument in data breach cases that credit monitoring costs are sufficient to convey standing. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3rd Cir. 2011) ("Appellants' alleged time and money expenditures to monitor their financial information do not establish standing, because costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more 'actual' injuries than the alleged 'increased risk of injury' which forms the basis for Appellants' claims"); *Remijas v. The Neiman Marcus Group, LLC*, 2014 U.S. Dist LEXIS 129574, 11 (N.D. Ill. 2014)(in finding that credit monitoring costs did not confer standing, the Court noted that "the cost of guarding against a risk is an injury sufficient to confer standing only if the underlying harm the plaintiff is seeking to avoid is itself a cognizable Article III injury); *Galaria v. Nationwide Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 23798 (S.D. Ohio 2014); *In re Barnes & Noble Pin Pad*, 2013 U.S. Dist. LEXIS 125730, 15 (N.D. Ill. 2013).

**(C)   Loss of Payment to the Hospitals/Diminution in the Value of Services**

13.   The Plaintiffs seek damages for "loss of payment to the hospital" and "diminution in value of the services." These inarticulately pled damages ostensibly seek the same thing – a return of some portion of money paid to the Hospital

Defendants that the Hospitals should have, as overhead, better spent on additional data security.

14. Plaintiffs' request for restitution does not confer standing. As an initial matter, the Complaint references that the Plaintiffs have been damaged by "loss of payment" to the Hospital Defendants. The Plaintiffs do not definitively claim that they actually made a payment to the Hospital Defendants, nor is it clear whether they, themselves, paid for medical services or whether those expenses were paid by the government or by a third-party payor.

15. Moreover, similar restitution theories have been asserted, and rejected, in other data theft cases. In *Remijas v. The Neiman Marcus Group, LLC*, 2014 U.S. Dist. LEXIS 129574 (N.D. Ill. 2014), the Plaintiffs were credit card holders for the defendant retailer. Following a data theft caused by third-party hackers, the plaintiffs' credit cards were compromised. *Id.* at 8-9. The plaintiffs sued the department store, alleging in part that the value of the products purchased from the department store (clothing, shoes, etc.) were devalued because the department store failed to protect the plaintiff's personal financial information. *Id.* at 13-14.

16. In dismissing the case for lack of standing, the *Remijas* court determined that the plaintiffs' theory concerning the diminution of the value of the department store's products was "creative, but unpersuasive." *Id.* at 13-14. The Court reasoned that a decrease in value type of damages was only available when the

alleged defect was intrinsic with the actual product itself. *Id.* The value-reducing deficiency was not a valid type of damages when the deficiency was extrinsic to the product or service actually purchased. *Id.* In not finding standing as to the decreased-value theory, the court noted that "[a] customer who is assaulted in the parking lot after patronizing the store may very well have a negligence claim against the store owner." *Id.* The Court noted that despite a customer having an assault claim, such a claim does not support a decrease in value theory of damages when the deficiency was not intrinsic to the product purchased. *Id.; See Also In re Barnes & Noble Pin Pad*, 2013 U.S. Dist. LEXIS 125730, 15 (N.D. Ill. 2013)(Court found no standing where plaintiffs, in part, alleged that the value of the goods purchased was decreased by defendant's failure to properly secure customer data).

17. The purpose of the Plaintiffs' contracting with the Hospital Defendants, to the extent they did so, was to provide medical care to the Plaintiffs. Medical services is the intrinsic nature of what Hospitals provide. The Plaintiffs do not allege that they came into the Hospital Defendants for the purpose of seeking data protection services. Just as providing data security services was extrinsic to the department store purchases in *Remija*, protecting patient information by a Hospital, while important, was not the intrinsic purpose of the Plaintiffs' engagement with the Hospital Defendants. Plaintiffs have no legal basis to support their request to

carve up the Hospitals' overhead expenses and then claim a devaluation as a form of damages. The devaluation of extrinsic products or services should not provide a basis for plaintiffs to allege an "injury in fact." To allow otherwise would enable uninjured plaintiffs to simply plead themselves around any meaningful standing inquiry.

**(D)   Emotional Distress Damages**

18. Plaintiffs claim emotional distress damages as a result of the data theft. However, under Alabama law, a plaintiff can generally recover for emotional injury only under two circumstances: (1) where a plaintiff sustains a physical injury as a result of a defendant's negligent conduct; or (2) where the plaintiff is in the zone of danger. *White Consol. Indus., Inc. v. Wilkerson*, 737 So. 2d 447 (Ala. 1999). The Plaintiffs do not allege that the Hospitals, nor the criminal hackers, caused them any physical injury, nor do Plaintiffs allege that they were in the zone of danger.  Plaintiffs' claim for emotional distress damages, especially based on some future identity theft that may or may not occur, does not confer standing. *See Reilly v. Ceridian Corp.*, 664 F. 3d 38, 42-43 (3rd Cir. 2011)(Court rejected standing for an emotional distress claim in a data security breach case, noting that "[t]he hacker did not change or injure the [plaintiffs'] bodies"); *see also Fu, et. al, v. Wells Fargo Home Mortgage*, 2014 U.S. Dist. LEXIS 127864 (N.D. Ala. 2014)(in a case arising from the alleged failure to properly secure plaintiffs'

personal information, the Court determined that plaintiffs were not entitled to emotional damages).

19. Because the Non-misuse Plaintiffs have suffered no injury in fact, those Plaintiffs are due to be dismissed for lack of standing.

### III. Plaintiff Joshua Capps' additional allegation that there have been attempts to steal his identity is still insufficient to convey standing because he has suffered no actual economic harm resulting from those attempts.

20. In addition to the damages allegations raised by the Non-misuse Plaintiffs, Plaintiff Joshua Capps ("Capps") alleges that following the data theft he has suffered "repeated attempts to . . . steal his identity including accounts with Chase Bank, Microsoft, and Twitter." [Doc. 12 at ¶*162*)]. While this allegation gets over the first hurdle in showing standing, e.g. misuse of stolen information, this allegation still falls short in establishing that Capps suffered an injury in fact. Courts, including one in the Northern District of Alabama, have determined that a data breach plaintiff must allege they suffered an out of pocket or unreimbursed expense in order to demonstrate standing. *See Burton v. Mapco Express, Inc.*, 2014 U.S. Dist. LEXIS 127870 (N.D. Ala. 2014); *Remijas v. The Neiman Marcus Group, LLC*, 2014 U.S. dist LEXIS 129574 (N.D. Ill. 2014)(although over 9,000 customers had fraudulent charges put on their account following the data breach, the complaint was dismissed because the named plaintiffs did not allege that the fraudulent charges resulted in an out of pocket expense for the plaintiffs). Capps

makes no such allegation. While he alleges that "attempts" were made to steal his accounts, it appears that those attempts fell short of actually causing Capps any economic harm that would confer standing to allow him to bring claims resulting from the data theft.[2] Therefore, Capps lacks standing.

IV. **Plaintiff Johannes A. Nhete's additional allegation that he received a "phishing" phone call following the data breach does not create standing for this Plaintiff.**

21. The Second Amended Complaint alleges that in addition to the alleged affect the data breach had on the Nonuse Plaintiffs, Johannes A. Nhete ("Nhete") started receiving phishing calls following the data theft. The receipt of phishing calls does not confer standing because the Second Amended Complaint does not allege how Nhete was financially harmed by the receipt of those calls. Without plausible allegations concerning how the receipt of these calls caused actual economic harm on Nhete, then the addition of the phishing call allegation does not confer standing to this Plaintiff. See *Remijas v. The Neiman Marcus Group, LLC*, 2014 U.S. Dist LEXIS 129574 (N.D. Ill. 2014)(in addressing a plaintiff's lack of standing based on the receipt of a phishing phone call, the Court noted that "this allegation is sufficient neither to establish a 'certainly impending' risk of identity theft, nor to qualify as a 'concrete' injury for purposes of standing").

---

[2] Notably, one of the accounts that Capps claims was the target of an attempted theft is with Chase. JP Morgan Chase was also the recent victim of a data breach that affected 76 million households. http://online.wsj.com/articles/j-p-morgan-says-about-76-million-households-affected-by-cyber-breach-1412283372

WHEREFORE, PREMISES CONSIDERED, Defendant Hospitals respectfully request the Court grant this Motion to Dismiss, by dismissing all the named plaintiffs except for Christopher Brown and Hixie Lewis for lack of standing.

Respectfully submitted,

*/s/ Richard E. Smith*
Richard E. Smith
Jonathan W. Macklem
Jeremy L. Carlson
J. Paul Zimmerman
Attorneys for Defendants, Riverview Regional Medical Center, LLC, Gadsden Regional Medical Center, LLC, Foley Hospital Corporation, Anniston HMA, LLC, Gadsden Regional Physician Group Practice LLC, and Affinity Hospital, LLC

**OF COUNSEL:**
CHRISTIAN & SMALL LLP
505 20th Street North
Financial Center, Suite 1800
Birmingham, AL  35203
Telephone: (205) 795-6588
Fax:  (205) 328-7234
Email:  res@csattorneys.com
        jwm@csattorneys.com
        jlc@csattorneys.com
        jpz@csattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this date, using the CM/ECF filing system which will send notification of such filing, served a copy of the foregoing pleading upon all counsel of record on this the 14th day of November, 2014:

Donald W. Stewart
Greg W. Foster
T. Dylan Reeves
STEWART & STEWART, PC
1021 Noble Street, Suite 110
Anniston, Alabama 36201

Paul Gregory Karlsgodt
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO 80202

Theodore Joseph Kobus , III
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111

Jimmy Dale Parrish
BAKER & HOSTETLER LLP
P.O. Box 112 (32802-0112)
200 South Orange Avenue, Ste. 2300
Orlando, FL 32801

Daniel Rubin Warren
David Alan Carney
BAKER & HOSTETLER LLP
3200 PNC Center, 1900 East 9th Street
Cleveland, OH 44114

Wynn M. Shuford
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building

400 20th Street North
Birmingham, Alabama 35203-3200

<u>/s/ Richard E. Smith</u>
OF COUNSEL