

FILED
2014 Nov-14  PM 05:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DENISE B. ALVERSON, *et al.*,
individually on behalf of themselves
and on behalf of all others similarly
situated,

        Plaintiffs,

v.

COMMUNITY HEALTH SYSTEMS,
INC., *et al.*,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 14-cv-01620

Judge Karon O. Bowdre


## MEMORANDUM IN SUPPORT OF MOTION FOR
## A MORE DEFINITE STATEMENT UNDER RULE 12(e)
## AND TO DISMISS UNDER RULE 12(b)(1)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ............................................................................................1

LAW AND DISCUSSION ...............................................................................3

I.   THE COURT SHOULD REQUIRE PLAINTIFFS TO REPLEAD. .............3

    A.   Shotgun Pleadings Are Prohibited in This Circuit..............................3

    B.   The Second Amended Complaint Is a Shotgun Pleading. ...................5

    C.   Plaintiffs' Pleading Fails To Distinguish Between the Various
        Defendants...............................................................................8

II.  NINETEEN OF THE PLAINTIFFS HAVE FAILED TO ALLEGE A
    COGNIZABLE INJURY IN FACT. ........................................................15

    A.   Plaintiffs Must Have Suffered an Injury-in-Fact. ..............................15

    B.   Plaintiffs' Claim of Increased Risk of Future Harm Is Not Enough...16

    C.   Plaintiffs' Other Claimed Injuries Are Insufficient To Establish
        Standing..............................................................................20

    D.   Plaintiffs' Purported Right to Recover Statutory Damages Also
        Cannot Create Standing....................................................24

CONCLUSION ...............................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Dental Ass'n v. Cigna Corp.*,
605 F.3d 1283 (11th Cir. 2010) ..........................................................................10

*Ambrosia Coal & Const. Co. v. Pages Morales*,
482 F.3d 1309 (11th Cir. 2007) ..........................................................................11

*Amburgy v. Express Scripts, Inc.*,
671 F. Supp. 2d 1046 (E.D. Mo. 2009) ...............................................................19

*Anderson v. District Bd. of Trustees of Cent. Fla. Comm. Coll.*,
77 F.3d 364 (11th Cir. 1996) ...........................................................................2, 4

*Babbitt v. Farm Workers*,
442 U.S. 289 (1979)............................................................................................17

*In re Barnes & Noble Pin Pad Litig.*,
2013 WL 4759588 (N.D. Ill. Sept. 3, 2013)............................................20, 21, 23

*Bowen v. First Family Fin. Servs., Inc.*,
233 F.3d 1331 (11th Cir. 2000) ..........................................................................22

*Burton v. MAPCO Exp., Inc.*,
--- F. Supp. 3d ----, 2014 WL 4686479 (N.D. Ala. Sept. 12, 2014).............18, 25

*Camp v. Ala. Telco Credit Union*,
2013 WL 2106727 (N.D. Ala. May 13, 2013) ......................................................6

*Chandler v. Volunteers of Am., Se., Inc.*,
2013 WL 4058078 (N.D. Ala. Aug. 12, 2013)....................................................14

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013)..............................................................17, 18, 19, 22

*Cooper v. Pressler & Pressler, LLP*,
912 F. Supp. 2d 178 (D.N.J. 2012).....................................................................25

*Crest Constr. II, Inc. v. Doe*,
660 F.3d 346 (8th Cir. 2011) ................................................................................7

*Cruz v. Cinram Int'l, Inc.*,
    574 F. Supp. 2d 1227 (N.D. Ala. 2008)........................................................10, 11

*D'Angelo v. Wilmington Med. Ctr., Inc.*,
    515 F. Supp. 1250 (D. Del. 1981)...............................................................13

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)................................................................................15

*Davis v. Coca-Cola Bottling Co. Consol.*,
    516 F.3d 955 (11th Cir. 2008) ..............................................................3, 5

*Eatman v. Jefferson Cnty. Dep't of Health*,
    2014 WL 5293679 (N.D. Ala. Oct. 15, 2014) ......................................6

*Galaria v. Nationwide Mut. Ins. Co.*,
    998 F. Supp. 2d 646 (S.D. Ohio 2014) ..........................................18, 23

*Garnett v. Millennium Med. Mgm't Res., Inc.*,
    2010 WL 5140055 (N.D. Ill. Dec. 9, 2010).......................................13

*Gladstone, Realtors v. Village of Bellwood*,
    441 U.S. 91 (1979)..............................................................................25

*Hammond v. The Bank of New York Mellon Corp.*,
    2010 WL 2643307 (S.D.N.Y. Jun. 25, 2010) ..................................8, 15

*Harris v. Fisher Price Inc.*,
    2013 WL 9861461 (N.D. Ala. Oct. 24, 2013) ................................8, 15

*Hickman v. Hickman*,
    563 Fed. App'x 742 (11th Cir. 2014) .................................................6

*Holmes v. Countrywide Fin. Corp.*,
    2012 WL 2873892 (W.D. Ky. July 12, 2012) .................................8, 25

*In re Science Applications Int'l Corp. Backup Tape Data Theft Litig.*,
    --- F. Supp. 2d ----, 2014 WL 1858458 (D.D.C. May 9, 2014)....................22, 23

*JI-EE Indus. Co. v. Paragon Metals, Inc.*,
    2010 WL 1141103 (S.D. Fla. Mar. 23, 2010) .....................................8

*Jianjun Fu v. Wells Fargo Home Mortg.*,
  2014 WL 4681543 (N.D. Ala. Sept. 12, 2014).................................................18

*Keith v. DeKalb Cty., Ga.*,
  749 F.3d 1034 (11th Cir. 2014) ...........................................................................4

*Key v. DSW, Inc.*,
  454 F. Supp. 2d 684 (S.D. Ohio 2006) .......................................................19, 24

*Kolar v. Preferred Real Estate Invs., Inc.*,
  361 F. App'x 354 (3d Cir. 2014) ..........................................................................7

*Low v. LinkedIn Corp.*,
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ...................................................21

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).....................................................................................15, 20

*Magluta v. Samples*,
  256 F.3d 1282 (11th Cir. 2001) (per curiam) ....................................................14

*Paylor v. Hartford Fire Ins. Co.*,
  748 F.3d 1117 (11th Cir. 2014) .......................................................................2, 5

*Payton v. Cnty. of Kane*,
  308 F.3d 673 (7th Cir. 2002) .............................................................................22

*Polanco v. Omnicell, Inc.*,
  988 F. Supp. 2d 451 (D.N.J. 2013) ....................................................................23

*Raines v. Byrd*,
  521 U.S. 811 (1997).............................................................................................25

*Reilly v. Ceridian Corp.*,
  664 F.3d 38 (3d Cir. 2011) ..........................................................17, 18, 20, 21

*Remijas v. Neiman Marcus Grp., LLC*,
  2014 WL 4627893 (N.D. Ill. Sept. 16, 2014)..............................................20, 24

*Scales v. Talladega Cnty. Dep't of Human Res.*,
  2012 WL 3775837 (N.D. Ala. Aug. 27, 2012) ....................................................4

*Starship Enter. of Atlanta, Inc. v. Coweta Cnty., Ga.*,
  708 F.3d 1243 (11th Cir. 2013) ...........................................................................5

*Steel Co. v. Citizens for a Better Envir.*,
  523 U.S. 83 (1998).............................................................................................25

*Sterk v. Best Buy Stores, L.P.*,
  2012 WL 5197901 (N.D. Ill. Oct. 17, 2012) ......................................................26

*Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.*,
  305 F.3d 1293 (11th Cir. 2002) ...........................................................................4

*Strautins v. Trustwave Holdings, Inc.*,
  --- F. Supp. 2d ---, 2014 WL 960816 (N.D. Ill. Mar. 12, 2014).................*passim*

*Tierney v. Advocate Health & Hosp. Corp.*,
  2014 WL 5783333 (N.D. Ill. Sept. 4, 2014) .......................................................12

*Tuscumbia City Sch. Sys. v. Pharmacia Corp.*,
  2012 WL 5932070 (N.D. Ala. Nov. 27, 2012) ......................................................8

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
  328 F.3d 374 (7th Cir. 2003) ...............................................................................3

*Wagner v. First Horizon Pharm. Corp.*,
  464 F.3d 1273 (11th Cir. 2006) .....................................................................3, 15

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990)............................................................................................17

*Willingham v. Global Payments, Inc.*,
  2013 WL 440702 (N.D. Ga. Feb. 5, 2013)......................................................8, 25

*Young v. Wells Fargo & Co.*,
  671 F. Supp. 2d 1006 (S.D. Iowa 2009) .............................................................15

**Statutes**

15 U.S.C. § 1681b.....................................................................................................7

15 U.S.C. § 1681e....................................................................................................12

18 U.S.C. § 1030(a) .............................................................................................7, 11

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................3

Fed. R. Civ. P. 10 .................................................................................................3

Fed. R. Civ. P. 11 ...............................................................................................13

Fed. R. Civ. P. 12 .........................................................................................*passim*

## INTRODUCTION

On August 18, 2014, defendant Community Health Systems Professional Services Corporation (CHSPSC) publicly announced that it had suffered a cyber-attack into its computer network.  Two days later, plaintiffs filed their initial complaint in this case, which they since have twice amended, adding parties and counts as they go.

The current Second Amended Complaint is a quintessential example of the type of "shotgun pleading" the Eleventh Circuit has often strongly condemned. The 117-page, 386-paragraph pleading presents a jumbled, internally inconsistent litany of seventeen counts by 21 plaintiffs (from fourteen different states) against eight defendants.  This pleading makes no attempt to identify which plaintiffs are actually asserting which claims against which defendants.  Adding to the confusion, plaintiffs have incorporated by reference all their prior allegations into each of their seventeen counts even though many of these allegations are incompatible with the counts into which they have been incorporated.  Moreover, it is readily apparent from the face of this prolix pleading that nineteen of the plaintiffs lack standing because they do not allege any facts showing they have suffered a cognizable injury.

In short, this complaint is not designed to provide the parties and the Court with a well-organized, intelligible statement of plaintiffs' claims.  Instead, it is a

hastily constructed attempt to be the first to file and to have more plaintiffs asserting more claims than anyone else—and to be the lead case among the six actions that have now been filed against CHSPSC arising from the hacking incident.[1]

At the appropriate time, CHSPSC intends to demonstrate that plaintiffs' numerous claims fail as a matter of law, and in certain instances are frivolous. However, CHSPSC believes it makes good sense to first take steps to "clean up" the pleading.  As the Eleventh Circuit recently held:  "A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for more a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer."  *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014); *see also Anderson v. District Bd. of Trustees of Cent. Fla. Comm. Coll.*, 77 F.3d 364, 366-67 (11th Cir. 1996) ("[W]ith the shotgun pleading out of the way, the trial judge will be relieved of the cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses.") (quotation

---

[1] As another facet of this strategy, plaintiffs asked this Court to issue orders staying the separate actions pending in other district courts, notwithstanding the fact that these same plaintiffs had already invoked the jurisdiction of the Judicial Panel of Multidistrict Litigation to determine whether, and where, these related actions should be consolidated.  (*See* D.E. 35, Resp. in Opp. to Mot. to Stay at 1-2 (Oct. 27, 2014).)

omitted); *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376-78 (7th Cir. 2003) (requiring more definite statement for complaint that "broke the scale at 109 pages containing 345 numbered paragraphs," explaining that "length and complexity may doom a complaint by obfuscating the claim's essence").

Accordingly, CHSPSC respectfully submits that the Court should strike plaintiffs' Second Amended Complaint in its entirety and require plaintiffs to file an amended complaint that presents a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), where "[e]ach claim founded upon a separate transaction or occurrence" is "stated in a separated count," Fed. R. Civ. P. 10(b). CHSPSC also seeks dismissal of the claims asserted by the great majority of the plaintiffs because they have pleaded no injury-in-fact and thus lack standing.

## LAW AND DISCUSSION

### I.   THE COURT SHOULD REQUIRE PLAINTIFFS TO REPLEAD.

#### A.   Shotgun Pleadings Are Prohibited in This Circuit.

The Eleventh Circuit has consistently held that shotgun pleadings like this one are unacceptable. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008) (collecting cases). A central feature of shotgun pleadings is that they "incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006). This type of pleading, of course, "lead[s] to a situation where most of the counts (*i.e.*, all but the first)

contain irrelevant factual allegations and legal conclusions." *Strategic Inc. Fund, LLC v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

The Eleventh Circuit's rule against shotgun pleadings is especially vital here, where the complaint purports to set forth numerous—and in several instances, inconsistent—counts and theories of relief against numerous defendants. In cases like this, shotgun pleadings "divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently." *Wagner*, 464 F.3d at 1279; *see also Keith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014) (shotgun pleadings make it "exceedingly difficult, if not impossible" to "separate the wheat from the chaff"; "Put plainly, shotgun pleadings unnecessarily tax the time and resources of the District Court as well as the Court of Appeals."). The Eleventh Circuit has held: "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Anderson*, 77 F.3d at 367; *see also Scales v. Talladega Cnty. Dep't of Human Res.*, 2012 WL 3775837, at *10 (N.D. Ala. Aug. 27, 2012) ("[S]hotgun pleadings require the court to sift through rambling and often incomprehensible allegations in an attempt to separate the meritorious claims from the unmeritorious, resulting in a massive waste of judicial resources.") (quotation omitted).

The Eleventh Circuit has admonished defendants who have been subjected to this sort of improper pleading to raise the issue at the outset.  *See Paylor*, 748 F.3d at 1126-27; *Starship Enter. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1250 n.7 (11th Cir. 2013) ("As officers of the court, the lawyers in any civil case have a duty to assist the court in narrowing the issues."); *Davis*, 516 F.3d at 983 ("[D]efense counsel faced with a complaint purporting to combine in one count multiple claims of eight plaintiffs should have moved the court for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).").  By this motion, CHSPSC is heeding that admonition.

### B.     The Second Amended Complaint Is a Shotgun Pleading.

Plaintiffs' Second Amended Complaint—all 386 paragraphs and 117 pages of it—is a classic example of the improper pleading practices described above. Twenty-one named plaintiffs from fourteen different states indiscriminately assert all seventeen of their claims against all eight named defendants.  (Compl. ¶¶ 256, 266, 275, 281, 291, 296, 303, 308, 312, 324, 328, 331, 338, 344-47, 352, 358, 360, 365, 370.)  And in each and every one of these claims, plaintiffs, with no evident thought or explanation, "adopt and re-allege all paragraphs set forth hereinabove as if fully set out herein."  (*Id.* at ¶¶ 236, 257, 267, 276, 282, 292, 298, 304, 317, 326, 330, 336, 341, 351, 357, 363, 369.)

This on its own should require repleading.  *See Hickman v. Hickman*, 563 F.

App'x 742, 744 (11th Cir. 2014) (affirming order requiring plaintiff to replead

where complaint "named eight defendants in the caption, several others in the

complaint, consisted of 23 numbered paragraphs describing the parties, 128

paragraphs listing fourteen counts of allegations," and where "[e]ach count repeats

and incorporates by reference the allegations set forth in each proceeding count");

*Eatman v. Jefferson Cnty. Dep't of Health*, 2014 WL 5293679, at *3 (N.D. Ala.

Oct. 15, 2014) (granting motion for more definite statement where the "bulk of

facts contained in Eatman's complaint are contained in the 'Statement of Facts'

section, and Eatman simply 're-alleges and incorporates by reference' all of the

proceeding paragraphs into each of her two counts").

Here, plaintiffs' use of blanket incorporations by reference has resulted in

significant anomalies.  For example, plaintiffs incorporate their unjust enrichment

claim into their count for breach of contract.  (Compl. ¶¶ 39, 292, 304.)  But under

Alabama law, these claims cannot co-exist and must be pled in the alternative.  *See*

*Camp v. Ala. Telco Credit Union*, 2013 WL 2106727, at *6 (N.D. Ala. May 13,

2013) (contract and unjust enrichment claims "must necessarily be pled in the

alternative" because "[a] party cannot recover on a claim of unjust enrichment

where there is an enforceable express contract between the parties concerning the

same subject-matter") (quotation omitted).  Thus, by intermingling these mutually exclusive claims together, plaintiffs have effectively defeated both of them.

Plaintiffs also have folded their purported RICO claims into their breach of contract count.  (Compl. ¶ 304.)  But as some courts have recognized, RICO and breach of contract are two entirely separate things.  Thus, in *Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354 (3d Cir. 2014), the court affirmed the dismissal of a RICO claim "sounding in contract," explaining, "We will not read language into § 1961 to federalize every state tort, contract, and criminal law action."  *Id.* at 363-64 (quotation omitted); *see also Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) ("RICO does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.").

As another example, plaintiffs' Fair Credit Reporting Act (FCRA) counts incorporate by reference plaintiffs' allegations under the Computer Fraud and Abuse Act (CFAA).  (Compl. ¶¶ 341, 351.)  Yet, the premises of these claims are not compatible.  The CFAA applies to those who "intentionally access a protected computer without authorization"—or to put it bluntly, hackers.  *See* 18 U.S.C. § 1030(a)(5).  FCRA, on the other hand, has nothing to do with hackers, but applies to consumer reporting agencies who voluntarily "furnish" consumer credit information to a third party who was not supposed to have it.  *See* 15 U.S.C. §

1681b, e(a); *see also Willingham v. Global Payments, Inc.*, 2013 WL 440702, at

*13 (N.D. Ga. Feb. 5, 2013) (rejecting FCRA claims following alleged data breach

because "the data was stolen, not furnished"); *Holmes v. Countrywide Fin. Corp.*,

2012 WL 2873892, at *16 (W.D. Ky. July 12, 2012) (same).  Thus, plaintiffs are

asserting a CFAA claim that requires them to allege the information was stolen,

and a FCRA claim that cannot apply if they allege that very fact—and they are

relying on the same allegations to prove both claims.  (Compl. ¶¶ 341, 351.)

For these reasons alone, plaintiffs should be directed to replead their case.

*See Harris v. Fisher Price Inc.*, 2013 WL 9861461, at *2 (N.D. Ala. Oct. 24, 2013)

(granting Rule 12(e) motion for more definite statement to require plaintiffs to

correct the "inherent inconsistency that exists between the AEMLA claim and the

strict liability claim"); *Tuscumbia City Sch. Sys. v. Pharmacia Corp.*, 2012 WL

5932070, at *3 (N.D. Ala. Nov. 27, 2012) (same); *see also JI-EE Indus. Co. v.

Paragon Metals, Inc.*, 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) (granting

motion for more definite statement where plaintiff incorporated contract

allegations into unjust enrichment claims; "Plaintiff is directed to amend the

Complaint to correct this internal inconsistency.").

### C.   Plaintiffs' Pleading Fails To Distinguish Between the Various Defendants.

Plaintiffs do not dispute the defendants they have sued are "separate and

distinct legal entities."  (Compl. ¶¶ 214, 228.)  These defendants include CHSI (a

8

holding company with no employees), CHSPSC (which provides professional and management services to various affiliates), and six hospitals and clinics.  (*Id.* at ¶¶ 24-29.)  Yet, as part of their improper shotgun approach, plaintiffs sweep *all* the defendants into *all* the counts without attempting to identify which defendants are supposedly responsible for any of the specific actions they have alleged.  This problem pervades every category of plaintiffs' substantive claims:

## RICO

Plaintiffs have repeatedly boasted about their RICO claims, both before this Court and the JPML.  (D.E. 26-1, MDL Br. in Supp. at 1-2; D.E. 36, Opp. Br. to Mot. to Stay at 3-4.)[2]  As currently pled, however, plaintiffs' RICO claims exhibit all the undesirable characteristics of the quintessential shotgun pleading.

To begin, plaintiffs fail to describe who allegedly did what in their purported "CHS Enterprise."  On ten separate occasions, plaintiffs assign responsibility for key elements of their RICO claims to "CHS, CHSPSC, The Hospital Defendants, and The Clinic Defendants (hereinafter collectively referred to as 'Defendants') or, *in the alternative*, a various combination thereof. . . ."  (Compl. ¶ 240 (emphasis

---

[2] Plaintiffs' RICO counts also fail to state a claim on which relief can be granted for other reasons as well.  Among other things, plaintiffs have failed to properly allege an enterprise, a RICO injury, a scheme to defraud, or proximate cause, and they lack any good-faith basis for alleging several of the critical "facts" on which those claims appear to be based.  CHSPSC will raise these substantive defects in plaintiffs' RICO claims if and when plaintiffs choose to replead them as part of a more definite statement.

9

added); *see also id.* at ¶¶ 241, 245, 247, 272, 273, 274, 275, 279, 280 (same).)

Plaintiffs use this nebulous, overly flexible, and uninformative language throughout their RICO counts, including when purporting to describe which entities constitute the alleged "enterprise" (*id.* at ¶ 245), which entities engaged in the alleged "pattern of racketeering activity" (*id.* at ¶ 241), which entities "derived income" from the alleged pattern of racketeering activity (*id.* at ¶ 240), and which entities constitute the "person" the enterprise allegedly "associated with" for purposes of imposing liability under the statute (*id.* at ¶ 247).

Similarly, plaintiffs improperly lump all the defendants together in alleging predicate acts of mail and wire fraud.  (*See id.* at ¶¶ 249-50, 251(a), (e), (i), (m), (n).)  They do so without differentiating between the defendants in any meaningful way.  Nor do they try to meet their burden of alleging with particularity that each one of the defendants acted with fraudulent intent.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (mail or wire fraud occurs only where defendant "*intentionally* participates in a scheme to defraud") (emphasis added).

Indeed, one court in this district faced with this type of shotgun-style RICO complaint required the plaintiff to replead its claim with a special "RICO Case Statement" describing in detail what each defendant allegedly did wrong.  *Cruz v. Cinram Int'l, Inc.*, 574 F. Supp. 2d 1227, 1234-36 (N.D. Ala. 2008).  The court explained that "the concepts within the [RICO] statute are so nebulous that if the

cause of action were only generally pled, a defendant would have no effective notice of a claim showing that the pleader is entitled to relief." *Id.* at 1230-31; *see also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity.").

### Computer Fraud and Abuse Act

As noted above, the CFAA requires a plaintiff to allege that the defendant gained unauthorized access into a computer system. *See* 18 U.S.C. § 1030(a). Here, plaintiffs' claim appears to be that it was the defendants themselves who hacked into their own network. However, in typical shotgun-pleading style, plaintiffs do not identify which defendant supposedly committed this criminal act—instead, plaintiffs allege it could have been any one of the defendants, or indeed any one of any of their employees. In plaintiffs' words: "CHS, CHSPSC, one of The Hospital Defendants *and/or* one of The Clinic Defendants, *or* an employee of CHS, CHSPSC, *or* one of the Hospital Defendants *or* one of The Clinic Defendants (for which CHS, CHSPSC, *or* one of The Hospital Defendants *or* one of The Clinic Defendants would be liable under a theory of respondeat superior) knowingly transmitted a program, information, code, or command to a protected computer without authorization and caused damage." (Compl. ¶ 284 (emphasis added); *id.* at ¶¶ 286-87).)

CHSPSC cannot ascertain from this disjunctive-packed language exactly who plaintiffs are accusing of participating in the intrusion.  Plaintiffs should be required to provide a more definite statement, specifically identifying the alleged culprit, as well as their good-faith basis for believing the allegation to be true.

## Fair Credit Reporting Act

Under FCRA, plaintiffs must establish that one or more defendants acted as a "consumer reporting agency." *See* 15 U.S.C. § 1681b.  Here again, they lump all defendants together, alleging:  "Defendants are a Consumer Reporting Agency as defined under FCRA because on a cooperative nonprofit basis and/or for monetary fees, Defendants regularly engage, in whole or in part, in the practice of assembling information on consumers for the purpose of furnishing Consumer Reports to third parties and/or uses interstate commerce for the purpose of preparing and/or uses interstate commerce for the purpose of preparing and/or furnishing Consumer Reports."  (Compl. ¶ 344.)

In fact, as plaintiffs' counsel must be aware, every court to consider the issue has held that entities like CHSPSC or its affiliates are not consumer reporting agencies as a matter of law.  *See Tierney v. Advocate Health & Hosp. Corp.*, 2014 WL 5783333, at *3 (N.D. Ill. Sept. 4, 2014) (dismissing FCRA claims against health care provider following data breach; statute is directed at entities that "regularly engage[] in whole or in part in the practice of assembling or evaluating

12

consumer credit information" and "[d]efendant—a health care provider—does not

engage in such a practice"); *see also Garnett v. Millenium Med. Mgm't Res., Inc.*,

2010 WL 5140055, at *2 (N.D. Ill. Dec. 9, 2010) (same); *D'Angelo v. Wilmington

Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981) ("The Act is directed at

firms which, as a regular part of their business aggregate credit information on

individual consumers, prepare credit evaluations, and report those evaluations to

persons or firms who rely thereon in making decisions about extending consumer

credit or offering employment.").

If plaintiffs believe, consistent with their obligations under Rule 11, that they

have a claim under FCRA they should be required to identify which entity or

entities they contend served as consumer reporting agencies.  *See also Strautins v.

Trustwave Holdings, Inc.*, --- F. Supp. 2d ----, 2014 WL 960816, at *8 (N.D. Ill.

Mar. 12, 2014) (questioning whether plaintiffs' counsel complied with Rule 11 in

asserting analogous FCRA claims following alleged data breach).

### Common Law Claims

Each of plaintiffs' numerous common law claims is indiscriminately—and

nonsensically—asserted by every plaintiff against all eight defendants.

For example, with respect to their unjust enrichment claim, plaintiffs allege:

"*Defendants* received payment from *Plaintiffs* to perform services that included

protecting, securing, keeping private, and not disclosing *Plaintiffs'* PII/PHI."

(Compl. ¶ 293 (emphasis added).)  An obvious problem with this pleading

approach is that plaintiffs reside and were treated in fourteen different states, while

the six hospital and clinic defendants treated patients solely in Alabama.  (*Id.* at ¶¶

24-29, 293-296, 299-302, 305-15, 318-24, 327-28, 331-32, 338-40, 358-60, 364-

65, 370-74.)  Do plaintiffs really mean to allege that a medical clinic in Alabama

received payment from a patient who was treated at a medical clinic in Ohio, or

Arizona, or Pennsylvania—or for that matter at a different clinic in Alabama?  *See*

*Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam) (ordering

repleading where plaintiff's complaint was "replete with allegations that 'the

defendants' engaged in certain conduct," notwithstanding the fact that "geographic

and temporal realities make plain that all of the defendants could not have

participated in every act complained of").

Similarly, plaintiffs indiscriminately sweep all defendants into the same net

in their contract count.  In describing who had contracts with whom, plaintiffs

simply allege:  "In documents that memorialize the obligations of the parties,

Defendants promised Plaintiffs and class members that they would protect, secure,

keep private, and not disclose their PII/PHI."  (Compl. ¶ 306.)  But again, do

plaintiffs really mean to allege that patients treated in one state had a contractual

relationship with clinics in other states—or with entities (CHSI and CHSPSC) that

are not in the business of providing medical care?  *See also Chandler v. Volunteers*

14

*of Am., Se., Inc.,* 2013 WL 4058078, at *3 (N.D. Ala. Aug. 12, 2013) (ordering

repleading where plaintiff's complaint impermissibly "lump[ed] the defendants

together as apparently synonymous entities").[3]

In sum, plaintiffs' thoughtless, sloppy pleading in this case is prejudicial to

the parties and the Court in numerous ways, and should be stricken.  *See Wagner*,

464 F.3d at 1280 (district court should have *sua sponte* ordered repleading where

plaintiffs failed "to connect their causes of action to the facts alleged").

## II.   NINETEEN OF THE PLAINTIFFS HAVE FAILED TO ALLEGE A COGNIZABLE INJURY IN FACT.

### A.   Plaintiffs Must Have Suffered an Injury-in-Fact.

"[T]he core component of standing is an essential and unchanging part of the

case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560 (1992).  Standing requires a plaintiff to "allege personal injury

fairly traceable to the defendant's allegedly unlawful conduct and likely to be

redressed by a favorable decision."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

342 (2006) (quotation omitted).

---

[3] Plaintiffs also do not make clear in their complaint which states' laws govern their common law claims.  *See Harris*, 2013 WL 9861461, at *2 ("Even in a nationwide class action, the constitutional limitations on choice of law must be respected.") (quotation omitted); *see also Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016-17 (S.D. Iowa 2009) (citing Eleventh Circuit precedent and requiring more definite statement where plaintiffs from multiple states "failed to specify the states' laws under which they intend to bring these common law claims").

### B.   Plaintiffs' Claim of Increased Risk of Future Harm Is Not Enough.

Only two plaintiffs to this case, Christopher Brown and Hixie Lewis, have attempted to meet this bedrock requirement.  These plaintiffs allege they have suffered actual economic losses resulting from actual identity theft, which they attempt to tie to the criminal intrusion at CHSPSC.  (Compl. ¶¶ 175-196.) Whether or not these plaintiffs have adequately pled or will ultimately be able to establish their standing to sue is not before the Court on this motion.[4]

The other nineteen plaintiffs have not met the basic requirement of pleading a cognizable injury-in-fact to establish their standing.  Seventeen of these plaintiffs do not claim their identities have been stolen or that their data has been misused in any way.  (*Id.* at ¶¶ 78-156, 169-174.)[5]  Two other plaintiffs, Joshua Capps and Johannes Nhete, claim their information has been misused but do not allege any actual economic losses as a result.  (*Id.* at ¶¶ 162, 167.)  Nhete alleges only that he has received unsolicited phone calls from individuals pretending to be his bank.

---

[4] As stated in their initial complaint, the intruders' objective was likely not to steal identities, but rather "valuable intellectual property, such as medical device and equipment development data." (D.E. 1, ¶ 26 (Aug. 30, 2014); *see also* Sample Notification Letter, Ex. A ("CHSPSC has been informed by federal authorities and outside forensic experts that this intruder has typically looked for information related to intellectual property.").)

[5] These plaintiffs are:  Denise Alverson, Janet Bearden, Bobbie Jean Richard, Dallas Richard, Robert Cadle, Patrica Saye, Cynthia Horgan, Lynda Grantham, Martin Griffin, Steve Percox, Joel Lovelace, Crystal Johnson, Stephen Ziegler, Lanny Reeves, Kristopher Byrum, Sarah Truman, and Richard Dale Floyd.

(*Id.* at ¶ 167.)  Similarly, Capps alleges only that unidentified third parties

attempted to access existing accounts at JP Morgan Chase, Twitter, and Microsoft.

(*Id.* at ¶ 162.)[6]  Having suffered no economic losses, much less as a result of the

criminal intrusion, all of these plaintiffs instead seek to pin their standing on an

alleged "increased risk of future identity theft."  (*Id.* at ¶ 37.)

　　　　As the Supreme Court held in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138

(2013), even an "objectively reasonable likelihood" of future harm is not enough:

"[W]e have repeatedly reiterated that threatened injury must be *certainly*

*impending* to constitute injury in fact, and that allegations of *possible* future injury

are not sufficient*." Id.* at 1146-47 (emphasis in original, quotations omitted); *see*

*also Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990) ("Allegations of possible

future injury do not satisfy the requirements of Art. III.  A threatened injury must

be 'certainly impending' to constitute injury in fact.") (quoting *Babbitt v. Farm*

*Workers*, 442 U.S. 289, 298 (1979)).

---

[6] Notably, each of these three companies has also recently disclosed criminal cyber-attacks.  *See*
JPMorgan Chase & Co., SEC Form 8-K (Oct. 2, 2014),
http://www.sec.gov/Archives/edgar/data/19617/000119312514362173/d799478d8k.htm
(compromised data "impacts approximately 76 million households and 7 million small
businesses"); Microsoft Confirms E-Mail Breach, http://www.databreachtoday.com/microsoft-
confirms-e-mail-breach-a-6464 (confirming cyber-attack by foreign hacking group) (Feb. 1,
2014); Twitter, Keeping our users secure, https://blog.twitter.com/2013/keeping-our-users-secure
(Feb. 1, 2013) ("[O]ur investigation has thus far indicated that the attackers may have had access
to limited user information . . . for approximately 250,000 users.").

In *Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011), the Third Circuit applied this reasoning in dismissing a data breach case much like this one.  The court explained:  "[W]e cannot now describe how Appellant will be injured . . . without beginning our explanation with the word 'if':  *if* the hacker read, copied, and understood the hacked information, and *if* the hacker attempts to use the information, and *if* he does so successfully, only then will Appellants have suffered an injury."  *Id.* at 43.

Courts in many other jurisdictions—including this one—agree.  *See Burton v. MAPCO Exp., Inc.*, --- F. Supp. 3d ----, 2014 WL 4686479, at *4 (N.D. Ala. Sept. 12, 2014) ("whether framed as an issue of standing or as an issue of ripeness, Mr. Burton cannot press forward unless he plausibly alleges not only that fraudulent charges appeared on his debit account as a consequence of the MAPCO data breach but also that he incurred damages as a result"); *Jianjun Fu v. Wells Fargo Home Mortg.*, 2014 WL 4681543, at *3 (N.D. Ala. Sept. 12, 2014) ("Consistent with these principles, courts have found that an alleged increased risk of injury is insufficient to confer standing."); *see also Strautins*, 2014 WL 960816, at *4 ("*Clapper* compels rejection of Strautins' claim that an increased risk of identity theft is sufficient to satisfy the injury-in-fact requirement for standing."); *Galaria v. Nationwide Mut. Ins. Co.*, 998 F. Supp. 2d 646, 654, 656 (S.D. Ohio 2014) (dismissing for lack of standing where plaintiffs alleged "their PII was stolen

and disseminated, but they have not alleged any adverse consequences from the theft or dissemination as they do not allege their PII has been misused").

Accordingly, the seventeen plaintiffs in this case who do not allege identity theft are relying, as in the cases cited above, on "a highly attenuated chain of possibilities," *see Clapper*, 133 S. Ct. at 1148, that may or may not ever come to pass:  if the criminals ever access their own information; if they ever use this information to perpetrate identity theft; if these efforts are successful; and if the plaintiffs actually suffer any actual economic loss as a result.  *See also Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046, 1053 (E.D. Mo. 2009) (rejecting standing; "multiple 'if's' squarely place plaintiff's claimed injury in the realm of the hypothetical"); *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689 (S.D. Ohio 2006) ("courts have embraced the general rule that an alleged increase in risk of future injury is not an 'actual or imminent' injury").[7]

And the two plaintiffs who do attempt to allege some misuse of their information—but no attendant economic loss as a result—have not suffered the

---

[7] Plaintiffs purport to allege that every patient who may have been impacted "suffered actual identity theft" by the criminal intrusion.  (Compl. ¶ 36; *see also id.* ¶ 37.)  But the mere theft of data is not "identity theft," which the Department of Justice defines as "all types of crime in which someone wrongfully obtains *and uses* another person's personal data in some way that involves fraud or deception, typically for economic gain."  United States Dep't of Justice, Identity Theft and Identity Fraud, http://www.justice.gov/criminal/fraud/websites/idtheft.html (click on:  "What Are Identity Theft and Identity Fraud?") (emphasis added).

type of "concrete" injury-in-fact that is required to support their standing.  *See*

*Lujan*, 504 U.S. at 560-61 (alleged injury must also be "concrete and

particularized"); *see also Reilly*, 664 F.3d at 43 ("Appellants' credit card

statements are exactly the same today as they would have been had Ceridian's

database never been hacked."); *Remijas v. Neiman Marcus Grp., LLC*, 2014 WL

4627893, at *3 (N.D. Ill. Sept. 16, 2014) (dismissing data breach claims for lack of

standing because "unauthorized credit card charges for which none of the plaintiffs

are financially responsible" do not qualify as "concrete" injuries); *In re Barnes &*

*Noble Pin Pad Litig.*, 2013 WL 4759588, at *6 (N.D. Ill. Sept. 3, 2013) (same).

### C.   Plaintiffs' Other Claimed Injuries Are Insufficient To Establish Standing.

All nineteen of these plaintiffs also uniformly claim standing on a variety of

other grounds, even apart from an increased risk of future identity theft.  These

include:  (1) emotional distress; (2) credit monitoring and other mitigation

expenses; (3) lost value of their personal information, and (4) lost value in the

services CHSPSC's affiliated hospital's provided to plaintiffs.  (Compl. ¶¶ 82, 87,

93, 96, 101, 107, 113, 119, 124, 129, 135, 139, 143, 147, 151, 156, 163, 168, 174,

350.)  These injuries are also not sufficient to support their standing to sue.

First, plaintiffs provide only boilerplate allegations of emotional distress,

without detail or even a conclusory assertion regarding the severity of the distress.

Courts have held similar vague emotional distress allegations following a data

breach are insufficient to support standing.  *See Reilly*, 664 F.3d at 45-46 (rejecting emotional distress as being sufficient to confer standing following alleged data breach because "any harm that may occur—if all of Appellants' stated fears are actually realized—may be redressed in due time"); *In re Barnes & Noble Pin Pad Litig.*, 2013 WL 4759588, at *5 ("Emotional distress in the wake of a security breach is insufficient to establish standing, particularly in a case that does not involve an imminent threat to the information."); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *3 (N.D. Cal. Nov. 11, 2011) (alleged emotional distress insufficient to confer standing in privacy case where it was "unclear from the face of the complaint what information was actually disclosed to third parties that would lead Plaintiff to suffer emotional harm").

Plaintiffs' alleged mitigation expenses are insufficient too.  As an initial matter, no plaintiff actually identifies any efforts undertaken or purchases made following the data theft, and plaintiffs cannot rely on other putative class members to establish their own standing.  *See Bowen v. First Family Fin. Servs., Inc.*, 233 F.3d 1331, 1339 n.6 (11th Cir. 2000) ("plaintiff cannot include class action allegations in a complaint and expect to be relieved of personally meeting the requirements of constitutional standing, even if the persons described in the class definition would have standing themselves to sue") (quotation omitted); *see also*

*Payton v. Cnty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) ("Standing cannot be acquired through the back door of a class action.") (quotation omitted).

But even if they had, the Supreme Court in *Clapper* made clear that a plaintiff "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." *Clapper*, 133 S. Ct. at 1143. This principle applies to alleged money spent in the wake of a data breach that occurred prior to any actual misuse. *See In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, --- F. Supp. 2d ----, 2014 WL 1858458, at *10 (D.D.C. May 9, 2014) (credit monitoring and other preventative measures insufficient to confer standing; "Nor is the cost involved in *preventing* future harm enough to confer standing, even when such efforts are sensible.") (emphasis in original); *Strautins*, 2014 WL 960816, at *4 n.8; *Galaria*, 998 F. Supp. 2d at 657; *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 471 (D.N.J. 2013) (same).

Plaintiffs also argue that they have been injured due to impairment of the value of their personal information. However, this too is not a cognizable loss as plaintiffs cannot allege that they intended to sell their own personal information on the cyber black market. *See, e.g.*, *In re Sci. Applications Int'l Corp.*, 2014 WL 1858458, at *10 ("Plaintiffs do not contend that *they* intended to sell this information on the cyber black market in the first place, so it is uncertain how they

were injured by this alleged loss.") (emphasis added); *Galaria*, 998 F. Supp. 2d at 660 (same); *In re Barnes & Noble*, 2013 WL 4759588, at *5 (same).

Finally, plaintiffs allege a "diminution in the value of services provided," or in other words that they paid too much for health care services because of the alleged data breach.  (Compl. ¶ 39.)  Notably, plaintiffs do *not* allege that any defendant failed to provide them with health-care services or that those services were otherwise substandard.  Rather, plaintiffs seek to recover money for something extrinsic to these health care services:  The alleged failure to protect their patient information.  Under plaintiffs' view, customers could sue a business any time any issue was present—for instance, a pothole in the parking lot or an unmarked slippery floor—for alleged overpayment damages, regardless of whether the customer suffered any actual injury as a result of this claimed defect.

The Northern District of Illinois recently rejected this theory of injury as being "unpersuasive," aptly describing it as follows:  "[E]ven if no [] injury actually befell the customer, under Plaintiffs' theory, the customer still suffered financial injury because he or she paid a premium for adequate store security, and the store security was not in fact adequate."  *Remijas*, 2014 WL 4627893, at *5. The court rejected standing on this basis because it ran contrary to a "vital limiting principle to this theory of injury," which is that the "value-reducing deficiency is always intrinsic to the product at issue."  *Id*.  The court held that while a customer

23

who was actually injured as a result of the defendant's alleged security deficiencies "may well have a negligence claim," they could not claim injury based on the theory that they paid too much for goods or services that were indisputably received and that were not themselves alleged to be deficient.  *Id.*[8]

Thus, regardless of what plaintiffs paid for their health care services, this does not change the fact that they have not suffered any injury as a result of the alleged criminal intrusion, and nor is any such injury certainly impending.

### D. Plaintiffs' Purported Right to Recover Statutory Damages Also Cannot Create Standing.

Finally, plaintiffs may attempt to rely on potential statutory damages under FCRA to establish their standing.  (Compl. ¶ 350.)  But plaintiffs' FCRA claims are "frivolous" and "wholly insubstantial," and therefore also cannot confer standing.  *See Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 89 (1998) (frivolous statutory claims cannot confer federal jurisdiction).

To begin with, the statute only applies to "consumer reporting agencies," which the defendants are not, as a matter of law.  *See, e.g.*, *Cooper v. Pressler &*

---

[8] These allegations are also insufficient to state a claim that plaintiffs have been injured as a matter of law.  *See Strautins*, 2014 WL 960816, at *7 (dismissing claims on both standing and merits grounds); *see also Hammond v. The Bank of New York Mellon Corp.*, 2010 WL 2643307, at *9 (S.D.N.Y. Jun. 25, 2010); *Key v. DSW, Inc.*, 454 F. Supp. 2d at 691 (same; "[B]y dismissing all of the Plaintiff's claims for lack of standing, by implication the Court has found that the Plaintiff has not alleged cognizable damages sufficient to state a contract, negligence, conversion, or fiduciary duty claim.").

*Pressler, LLP*, 912 F. Supp. 2d 178, 186 n.8 (D.N.J. 2012) (statutory definition refers "to companies such as Equifax, Experian, and TransUnion, the three major United States companies which track consumer credit ratings").  Moreover, as stated above, under no legitimate iteration of the facts could plaintiffs show that any defendant "furnished" their information—it was stolen.  *See Holmes*, 2012 WL 2873892, at *16; *Willingham*, 2013 WL 440702, at *13.

As the court held in *Burton*:  "Mr. Burton offers no support for his assertion that the defendants are within the requirements of FCRA, no support for his assertion that the defendants are a 'consumer reporting agency,' and no support for his assertion that the theft of credit card information constitutes 'furnishing consumer reports' or 'disposal' of consumer information for purposes of violation of the Act."  2014 WL 4686479, at *6.

Moreover, "[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would otherwise not have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997); *see also Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (Congress may not "abrogate the Art. III minima").  As the Northern District of Illinois has thus held:  "[W]hile Congress is permitted to expand standing to the extent permitted under Article III, Congress cannot abrogate the basic standing requirement that an individual suffer an actual redressable injury-in-fact." *Sterk v.*

25

*Best Buy Stores, L.P.*, 2012 WL 5197901, at \*5-6 (N.D. Ill. Oct. 17, 2012) (alleged right to recover statutory damages could not create standing); *see also Strautins*, 2014 WL 960816, at \*8 (allegation that defendant violated plaintiffs' rights under FCRA insufficient to confer standing because "the plaintiff must also allege that she has been injured by the violation to establish standing").

Plaintiffs must plead an actual injury-in-fact apart from the alleged statutory violation in order to establish their standing.  Nineteen plaintiffs have failed to do this, and thus their claims should be dismissed under Rule 12(b)(1).

## CONCLUSION

For the reasons stated above, the Court should strike the Second Amended Complaint under Rule 12(e) and require the plaintiffs to provide a more definite statement, consistent with the Eleventh Circuit's prohibition on shotgun pleadings. In addition, the Court should dismiss the claims of plaintiffs Denise Alverson, Janet Bearden, Bobbie Jean Richard, Dallas Richard, Robert Cadle, Patrica Saye, Cynthia Horgan, Lynda Grantham, Martin Griffin, Steve Percox, Joel Lovelace, Crystal Johnson, Stephen Ziegler, Lanny Reeves, Kristopher Byrum, Sarah Truman, Richard Dale Floyd, Joshua Capps, and Jhonnas Nhete for lack of standing under Rule 12(b)(1).

Dated:  November 14, 2014                 Respectfully submitted,

                                          BAKER & HOSTETLER LLP

                                          /s/ Daniel R. Warren
Paul G. Karlsgodt (*admitted pro hac*)    Daniel R. Warren (*admitted pro hac*)
1801 California St., Suite 4400            David A. Carney (*admitted pro hac*)
Denver, Colorado 80202                    1900 East Ninth Street, Suite 3200
Telephone:  (303) 861-0600                Cleveland, OH 44114
Facsimile:  (303) 861-7805                Telephone:  (216) 620-0200
Email:  pkarlsgodt@bakerlaw.com           Facsimile:   (216) 696-0740
                                          Email: dwarren@bakerlaw.com
                                                  dcarney@bakerlaw.com

                                          Theodore J. Kobus, III (*admitted pro hac*)
                                          45 Rockefeller Plaza
                                          New York, NY  10111-0100
                                          Telephone: (212) 589-4200
                                          Facsimile:  (212) 589-4201
                                          Email: tkobus@bakerlaw.com

              *Attorneys for Defendant Community Health Systems*
                    *Professional Services Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the forgoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to the

following counsel of record on this 14th day of November, 2014:

Donald W. Stewart
Stewart & Stewart, PC
1021 Noble Street, Ste. 110
Anniston, AL 36201

Greg W. Foster
T. Dylan Reeves
Stewart & Stewart
P.O. Box 721
Bessemer, AL 35021

Richard E. Smith
Jonathan W. Macklem
Jeremy L. Carlson
J. Paul Zimmerman
CHRISTIAN & SMALL LLP
505 20th Street North, Suite 1800
Birmingham, AL 35203

Wynn Shuford
Elizabeth Huntley
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20th Street North
Birmingham, AL  35203

/s/ Daniel R. Warren